IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHRISTOPHER BAXLEY,
       Plaintiff,

vs.                              Case No.: 5:12cv69/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]
       Defendant.
_____/

## MEMORANDUM DECISION AND ORDER

This case has been referred to the undersigned magistrate judge for disposition pursuant to the authority of 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, based on the parties' consent to magistrate judge jurisdiction (*see* docs. 10, 11).  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act"), for review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

Upon review of the record, the court concludes that certain determinations of the Commissioner do not comport with proper legal principles.  Thus the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Order.

## I.    PROCEDURAL HISTORY

On December 5, 2007, Plaintiff filed an application for SSI, alleging disability beginning September 11, 2001[2] (tr. 10).[3]  Plaintiff's application was denied initially and on reconsideration,

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), she is therefore automatically substituted for Michael J. Astrue as the Defendant in this case.

[2]  As the Commissioner submits, although in his instant application Plaintiff alleges disability commencing September 11, 2001, the application was not filed within two years of an unfavorable decision that was rendered on September 27, 2007 (*see* tr. 10; doc. 16 at 3).  Accordingly, pursuant to 20 C.F.R. § 416.1405, the prior determination cannot be appealed.  Plaintiff does not appear to disagree with this conclusion (*see* doc. 13 at 2).  Thus the court accepts

and thereafter he requested a hearing before an administrative law judge ("ALJ").  An ALJ held a hearing on July 13, 2010, at which Plaintiff was represented by counsel, and Plaintiff and a vocational expert ("VE") testified.  On August 27, 2010, a decision was issued in which the ALJ found Plaintiff "not disabled," as defined under the Act, at any time through the date of the decision (tr. 10–16).[4]  The Appeals Council subsequently denied Plaintiff's request for review (*see* tr. 1).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal followed.

II.    FINDINGS OF THE ALJ

In the August 27, 2010, decision the ALJ made the following findings:

1)    Plaintiff has not engaged in substantial gainful activity since December 5, 2007, the date he filed his SSI application.

2)    Plaintiff has the following severe impairment:  multi-level lumbar spinal spondylosis with moderate right and left neuroforaminal narrowing.[5]

3)    Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment.

4)    Plaintiff has the residual functional capacity ("RFC") to perform light work,[6] with

---

that the relevant time period in this case is from September 28, 2007 (the day following the date of the prior unfavorable decision) through August 27, 2010 (the date of the ALJ's decision on the current application).

[3] All references to "tr." refer to the transcript of Social Security Administration record filed on July 11, 2012 (doc. 9).  Also, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system or any other page numbers that may appear.

[4] ALJ Morton J. Gold, Jr., conducted the administrative hearing and his name appears on the decision.  ALJ Millard L. Biloon signed the decision for ALJ Morton, however.

[5] The ALJ identified the following impairments as being non-severe:  right ear pain, left leg pain with numbness to the right foot, left hand knotting up, blurred vision in the left eye, bronchitis, right knee pain with swelling from the knee to the calf, rash on the chest and hands, insect bites, sore throat, cough, right knee pain, attention deficit/hyperactivity disorder, mood disorder, bipolar disorder, cognitive disorder not otherwise specified ("NOS"), posttraumatic stress disorder, alcohol abuse, polysubstance abuse, anxiety, and fibromyalgia (tr. 12–13).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

certain limitations.[7]

     5)     Plaintiff is unable to perform any past relevant work.

     6)     Plaintiff was a "younger individual" on the date he filed his SSI application; during the pendency of his application Plaintiff became an individual "closely approaching advanced age."

     7)     Plaintiff has at least a high school education and is able to communicate in English.

     8)     The Medical-Vocational Rules, used as a framework for decisionmaking, support a finding that Plaintiff is "not disabled." Thus, regardless of whether Plaintiff has transferable job skills, the transferability of job skills is not material to the disability determination.

     9)     In light of Plaintiff's age, education, work experience, and RFC, and based on the testimony of the VE, jobs exist in significant numbers in the national economy that Plaintiff can perform.

     10)     Plaintiff has not been under a disability, as defined in the Social Security Act, since December 5, 2007.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983),

---

or leg controls." 20 C.F.R. § 416.967(b).

    [7] Plaintiff's multi-level lumbar spinal spondylosis precludes climbing ladders, ropes, or scaffolding. Plaintiff can sit, stand, walk, and push and/or pull for at least six of eight hours each eight-hour workday. He can lift/carry twenty pounds occasionally (up to one third of an eight-hour workday) and ten pounds frequently (up to two thirds of an eight-hour workday). He can individually climb ramps/stairs, stoop, kneel, crouch, and crawl for no more than one third of an eight-hour workday. He should avoid concentrated exposure to extreme vibrations that might exacerbate his low back pain and hazardous work environments where a lack of speedy movement might endanger him or others if he is not able to move quickly to avoid an oncoming hazard.

*superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 416.920(a)–(g), the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. §§ 404.1512, 416.912.[8]  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.     PLAINTIFF'S PERSONAL, EMPLOYMENT, AND RELEVANT MEDICAL HISTORY

A.      Personal History

Plaintiff was born on February 4, 1958, making him forty-nine years of age on December 5, 2007, the date he filed his SSI application (tr. 15).  At the time of the August 27, 2010, unfavorable decision Plaintiff was fifty-two years old.  He holds a General Equivalency Diploma ("GED") (tr. 207).

B.      Employment History

Plaintiff reported that he has worked as a factory laborer and a grocery store manager, among numerous other jobs (tr. 31–32; 201; 220).  The ALJ found that Plaintiff has past relevant work as an industrial truck/forklift operator (tr. 15).  Plaintiff stopped working in 2001, when his "legs wouldn't allow" him to maintain a permanent job (tr. 32).

---

[8]  The legal standards applied generally are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416).  Therefore, citations in this Order should be considered to refer to the appropriate parallel provision.  The same applies to citations of statutes or regulations found in quoted court decisions.

C.      Relevant Medical History[9]

Plaintiff was treated at Cardiology Associates commencing in July 2003 for atherosclerotic cerebrovascular disease, hypertension, diabetes mellitus, dyslipidemia, peripheral neuropathy, urinary incontinence, perennial rhinitis, depression, cephalgia, hemorrhoidal associated hematochezia, and polyarthritis (tr. 272).  In the report of a July 15, 2003, examination, Anthony Evans, M.D., noted a history of left-side weakness, stroke in 1992, and chest tightness (tr. 289).  He found trace edema in the extremities.  In September 2003, Plaintiff underwent a cardiac fluoroscopy and arteriography that revealed normal coronary arteries (tr. 280).

Lawrence V. Annis, Ph.D., conducted a consultative psychological examination of Plaintiff in April 2004 (tr. 263–65).  Dr. Annis noted Plaintiff's complaints that he "did not function like [he] used to," was often confused, and could not "think of something long enough to do it" (tr. 263).  Dr. Annis diagnosed adjustment disorder with mixed anxiety and depressed mood; pain disorder associated with a general medical condition, chronic; and a possible mixed organic brain syndrome (tr. 265).  Dr. Annis opined that Plaintiff's depression and anxiety would impede occupational achievement.  According to Dr. Annis, Plaintiff should avoid jobs that required technical precision; driving; operating machinery; contact with dangerous substances; or frequent, protracted, or demanding social interaction (tr. 265).

Plaintiff was seen for right knee pain at Bay Medical Center in July 2007 (tr. 268–69).  Radiographs revealed degenerative changes in the medial compartment of the right knee (tr. 268).  In October 2007 Plaintiff was seen at Cardiology Associates for complaints of chest discomfort and pressure, shortness of breath on exertion, orthopnea, and claudication (tr. 278).  The examining physician, Charles Mayes, M.D., concluded that, in light of Plaintiff's normal cardiac tests in 2003, his symptoms were most likely related to uncontrolled hypertension (*id.*).  At a follow-up examination in  November 2007, Plaintiff reported that his blood pressure had come down within

---

[9] The court's July 13, 2012, Scheduling Order, in relevant part, directs Plaintiff to "specifically cite the record by page number for factual contentions," and it further informs that the "[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (doc. 12 at 1–2, emphasis in original).  In light of this instruction, and Plaintiff's arguments in his memorandum, the pages and information cited by Plaintiff—*where cited with the requisite specificity*—are those on which the court has primarily focused its review in the Relevant Medical History section of this Order.  In the Discussion section, the court refers to this evidence as appropriate as well as to other record evidence contained in the transcript.

three days of starting medication in October and that his blood pressure was now under "excellent control" (tr. 272). In December 2007, at Calhoun Liberty Hospital, Plaintiff underwent a cervical spine x-ray (tr. 305). This radiograph revealed "multilevel cervical spondylosis" with neural foraminal narrowing on the left at C3-4 and C4-5.

Plaintiff presented to the Liberty County Health Department in December 2007 with severe back pain that was unrelieved by medication (tr. 291). The report of January 2008 magnetic resonance imaging ("MRI") revealed multilevel spondylosis and degenerative disc and facet changes, most prominent at L1-L2 and L2-L3 (tr. 523). In February 2008 James Bryan, an advanced registered nurse practitioner ("ARNP") at the Liberty County Health Department, completed a Neurological Status Report Form in connection with Plaintiff's disability claim (*see* tr. 317–20). ARNP Bryan opined that Plaintiff had degenerative changes in the cervical and lumbar spine, with bulging at L2-5 and radiculopathy in both arms and legs (tr. 318). ARNP Bryan further noted that Plaintiff's gait was unsteady, his fine motor skills were diminished by an estimated 4/5 deficit, Plaintiff fell frequently, and Plaintiff used a cane to ambulate (*id.*). Additionally, in ARNP's Bryan's opinion, Plaintiff's grip strength was diminished by two-thirds compared with others his age and the strength in his arms and legs was decreased by two-thirds (*id.*). According to ARNP Bryan, he had seen "no improvement in the past 2 years. Pt's condition continues to deteriorate" (*id.*).

George Horvat, Ph.D., conducted a consultative examination of Plaintiff in March 2008 (tr. 442–45). Dr. Horvat opined that Plaintiff's judgment and decision making were normal, his social judgment was normal although he isolated himself due to his illness, and his reality testing was adequate (tr. 444). Plaintiff's illness appeared to be his main stressor, and his skill deficits were in the areas of activities of daily living (*id.*). Dr. Horvat diagnosed pain disorder and adjustment disorder with depressed mood (*id.*).

Iqbal Faruqui, M.D., performed a physical consultative examination of Plaintiff in March 2008 (tr. 447–53). Dr. Faruqui reported that his examination was essentially unremarkable, although

he noted that Plaintiff might need a physical capacities assessment (tr. 453).[10]  Dr. Faruqui also commented that he doubted that Plaintiff's use of a cane for ambulation was medically necessary because recently Plaintiff had walked for ten minutes on a treadmill test; the test was terminated due to fatigue and dypsnea rather than poor balance (*id.*).

ARNP Bryan saw Plaintiff at the Liberty Community Health Center in April 2009, when he diagnosed Plaintiff with fibromyalgia (tr. 533).  In August 2009, Plaintiff presented at the Liberty Community Health Center with ongoing right leg pain and numbness to the right foot that he reported was getting worse (tr. 529).

D.      Hearing Testimony

Plaintiff testified at the July 13, 2010, administrative hearing that he receives injections for pain that travels up his leg and into his buttocks and back (tr. 35).  According to Plaintiff, any action that involves arm motion may cause a flare-up of his pain (tr. 35–36; 37).   Plaintiff indicated he is able to work for ten to fifteen minutes before the pain commences (tr. 36).  His pain is slight if he is able to avoid any strenuous activity, but to manage the pain he must sit in a chair or lie down (tr. 37).  Plaintiff stated that he has no money to see a specialist (tr. 38). Plaintiff also testified that he experiences pain in both knees, which "go out" on him every couple of months (tr. 38–39).  In 2003 he underwent surgery for a shattered bone in the left knee (tr. 39).  According to Plaintiff, when he walks for a short period of time his knees throb and feel as if they will give way and he also feels pain while sitting (*id.*; tr. 40).   He can sit for only fifteen to thirty minutes before feeling uncomfortable due to pain (tr. 40).  If he goes out, he must take his cane in case his legs give out (tr. 42).

Plaintiff testifed that he cannot do chores around the house, such as cooking, sweeping, or vacuuming.  According to Plaintiff, his wife must do everything because doing chores causes him pain (tr. 44).  He drives short distances a few times a week (tr. 46).  Plaintiff also testified that he

---

[10]  Among other findings (*see* tr. 452–53), Dr. Faruqui noted full range of motion in all joints, with some pain on movement.  Plaintiff's gait was normal, and he was able to walk without a cane, although it was noted that he used one to exit the office.  Dr. Faruqui noted no residual weakness, 5/5 strength in all four extremities, and some imbalance on tandem walking. Plaintiff's grip strength was equal and normal bilaterally. His straight leg raise testing was negative. There was no point tenderness on the spinal column, although there was mild paraspinal muscle tenderness with no spasms.

suffers from paranoia and is unable to be around people (tr. 41).  He can go shopping for short periods of time, but if the store is crowded he "freaks out" and must leave (tr. 42).  According to Plaintiff, he has trouble with memory, concentration, and focus; he does not socialize (*id.*).  Plaintiff stated that he was diagnosed with bipolar disorder; he is depressed because he can no longer work and becomes agitated with people because of his depression (tr. 43–44).  Also, according to Plaintiff, although he has a GED he sometimes has difficulty writing "[b]ecause of my mental problems" (tr. 28).

A VE also testified at the administrative hearing.  The ALJ asked the VE to assume the following hypothetical facts: the individual was "younger" at the time of the application but was currently "approaching advanced age."  The individual had a GED and was able to read, write, and perform simple mathematical computations.  The individual was limited to performing light work that never required him to climb ladders, ropes, or scaffolding; he could sit, stand, walk, push and/or pull for at least six hours in an eight hour day; he could lift/carry twenty pounds occasionally and ten pounds frequently; he could climb ramps, stairs, stoop, kneel, crouch, and crawl for no more than one third of an eight-hour work day; and he should avoid concentrated exposure to extreme vibrations that may exacerbate his low back pain and hazardous work environments where a lack of speedy movements might endanger himself or others (tr. 54–55).  According to the VE, such an individual would be unable to perform the past relevant work performed by Plaintiff (tr. 55).  The individual could, however, perform the requirements of several other types of light work, including advertising material distributor; protective clothing issuer; and collator (tr. 56).

V.    DISCUSSION

Plaintiff summarizes his arguments by stating that the ALJ erred by failing to consider all of the medical evidence; dismissing the opinions of treating sources; and ignoring Plaintiff's hearing testimony (doc. 13 at 8).[11]  He seeks reversal of the Commissioner's decision and remand with instructions to properly assess Plaintiff's testimony and the medical evidence from the treating and non-treating sources (*id.* at 13).  The Commissioner responds that Plaintiff had a fair hearing and

---

[11]  The court has made its best effort to locate, understand, and address Plaintiff's more particular arguments even though, unfortunately, they are not all fully developed or presented in an organized or cogent manner.

full administrative consideration in accordance with applicable law and that substantial evidence supports the ALJ's decision. Accordingly, she submits, the decision denying benefits should be affirmed.

The ALJ's Step Two Findings

Plaintiff first contends that the ALJ erred by determining that his attention deficit/hyperactivity disorder; mood disorder; bipolar disorder; cognitive disorder, NOS; post-traumatic stress disorder; alcohol abuse; poly-substance abuse; and anxiety were not medically determinable impairments (doc. 13 at 9). Plaintiff states that he "disagrees that these impairments are 'not medically determinable,' when they were diagnosed by the Administration's own consultative examiner[,]" Dr Annis (*id.*).

At step two the claimant must show that (1) he has a medically determinable impairment or combination of impairments, and (2) the impairment or combination of impairments is severe. *See* Bowen v. Yuckert, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed.2d 119 (1987); 20 C.F.R. § 416.920(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.928. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c), 416.921(a). With respect to mental functions, basic work activities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). The Regulations mandate specific procedures for evaluating mental impairments, *see* 20 C.F.R. § 416.920a and 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 *et seq.*, including the evaluation of two sets of criteria known as the "Paragraph A" and "Paragraph B" criteria. Paragraph A criteria relate to medical findings. Paragraph B criteria address impairment-related functional limitations in four broad areas: activities of daily living; social functioning; concentration, persistence or pace; and repeated episodes of decompensation (*see, e.g.*, Listing 12.00C). Generally, a mental impairment is deemed non-severe at step two if the degree of limitation in the first three functional areas is "none" or "mild," and the degree of limitation in the

fourth area is "none," "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1).

First, Dr. Annis' diagnoses included adjustment disorder with mixed anxiety and depressed mood; pain disorder associated with a general medical condition, chronic; and a possible mixed organic brain syndrome (tr. 265). Thus Dr. Annis diagnosed some, but by no means all, of the numerous mental impairments Plaintiff identifies in the preceding paragraph. Second, Dr. Annis performed his consultative psychological evaluation in April 2004, some three and one-half years prior to the relevant period in this case (which, as has been discussed, commenced September 28, 2007, *see* n.2, *supra*), in connection with Plaintiff's prior, unsuccessful application for benefits—an unfavorable decision that is now unappealable. As res judicata applies to the period before September 28, 2007, *see* 20 C.F.R. § 416.1405 ("An initial determination is binding unless you request a reconsideration within the stated time period, or we revise the initial determination"), the ALJ was not required to consider Dr. Annis's 2004 evaluation in deciding Plaintiff's current claim for SSI benefits. Third, even if the mental impairments noted by Plaintiff were "medically determinable," substantial evidence from the relevant time period—as discussed below—supports the ALJ's conclusion that these impairments are non-severe.

Dr. Horvat, in his March 2008 consultative psychological evaluation, determined that Plaintiff suffers from pain disorder and adjustment disorder with depressed mood (tr. 444). Dr. Horvat found no psychological impairments that would prevent Plaintiff from working, provided he could be cleared to work physically, and Dr. Horvat opined that Plaintiff's psychological treatment program could be scheduled around his work commitments (tr. 444–45). Dr. Horvat assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 65,[12] indicating that Plaintiff had only mild psychological symptoms and was generally functioning pretty well at that time (tr. 444). *See* Ward v. Astrue, 286 F. App'x 647, 650 n.1 (11th Cir. 2008) (stating that

---

[12] GAF is the overall level at which an individual functions, including social, occupational, academic, and other areas of personal performance. Diagnostic and Statistical Manual of Mental Disorders 30–32 (4th ed. 1994) ("DSM–IV"). It may be expressed as a numerical score. *Id.* at 32. A GAF score between 61 and 70 reflects mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. *Id.*

substantial evidence supported the ALJ's finding that Plaintiff's mental impairment was not severe, in part based on the claimant's GAF score of 60).  Moreover, Dr. Horvat's findings are consistent with those of two non-examining state agency psychologists, who concluded that Plaintiff had no severe mental impairments (*see* tr. 480; 494).  State agency psychologists and physicians are considered to be qualified and experts in the evaluation of the medical issues in  disability claims under the Act.  20 C.F.R. § 416.927(e).  Specifically, these psychologists determined that Plaintiff's alleged impairments caused no more than mild restrictions in daily activities, mild difficulties in maintaining social function, mild difficulties in maintaining concentration, persistence, and pace, and no episodes of decompensation (*see* tr. 490; 504).  As noted, pursuant to § 416.920a(d)(1), this degree of limitation generally results in a mental impairment being deemed non-severe at step two, unless there is evidence—which Plaintiff does not identify here—that shows there is more than a minimal limitation in the claimant's ability to do basic work activities.

The court also addresses a largely illegible report from the Liberty Community Health Center dated March 13, 2009 (tr. 550–52), which appears to state that Plaintiff was diagnosed with attention deficient/hyperactivity disorder; mood disorder due to a stroke, bipolar type; cognitive disorder; amnestic disorder due to stroke; chronic pain disorder; post-traumatic stress disorder; alcohol abuse; and polysubstance abuse (tr. 552).  As noted by the ALJ, "[t]hese are bald diagnoses . . . with no 'A' criteria to establish them, let alone any 'B' criteria regarding the severity of these alleged mental impairments that the claimant is supposed to suffer from." (tr. 11).  The ALJ additionally noted, correctly, that "[p]olysubstance abuse has not been shown to cause any functional limitations, mentally or physically." (*id.*).  Furthermore, the March 13, 2009, report bears an illegible signature and does not identify the position of the evaluator, thus making it impossible to determine whether the evaluator should be considered an acceptable medical source.  *See* 20 C.F.R. § 416.913 (defining acceptable medical sources as including licensed physicians and licensed or certified psychologists); 20 C.F.R. § 416.913(d)(1) (providing that other valid sources include practitioners such as "nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists.").  A related report, identified as a "Psychopharmacology Follow-up Visit Note[ ]," dated April 27, 2009, and apparently signed by the same source, indicates that Plaintiff's mood, concentration, and ability to remain on task had improved with medication (tr. 553).  Even if the

one-time diagnostic report and the follow-up report (neither of which Plaintiff specifically cites in his memorandum) could be considered as coming from an acceptable medical source, the court notes that neither indicates that Plaintiff suffers from more than a minimal limitation in his mental ability to do basic work activities.  Furthermore, as the ALJ stated, neither is accompanied by an assessment of Plaintiff's mental functional limitations.  Accordingly, they do not support a finding that Plaintiff suffers from a severe mental impairment.

Plaintiff also complains that the ALJ refused to credit the severity of his mental impairments on the ground there was no record of treatment after April 2009 "even though the medical evidence shows treatment and medication for depression and anxiety (Decision pg. 4)" (doc. 13 at 9). Plaintiff does not identify precisely where in the record evidence of treatment and medication for depression and anxiety after April 2009 can be located.  Nevertheless, the court notes that certain records from the Liberty Community Health Center and Liberty Community Healthcare that are dated after April 2009 contain a list of Plaintiff's medications that appear to be for these impairments, such as Abilify and Zoloft (*see*, *e.g.*, tr. 527; 528; 530; 532; 558; 559).  These records seem only to reference Plaintiff's medications and prescription refills, however; they do not appear to contain any evidence of clinical treatment for depression or anxiety by a psychiatrist or psychologist.   Thus, as the ALJ indicated, "there does not appear to be any follow-up psychiatric/psychological treatment after April 2009[,] making these allegations from a nontreating source." (tr. 13).[13]  Moreover, most of the substantive aspects of these entries apparently were made

---

[13]  Plaintiff apparently reads this statement by the ALJ as identifying a "failure to follow through with mental health treatment," and, citing Sparks v. Barnhart, 434 F. Supp. 2d 1128 (N.D. Ala. 2006), he complains that such a failure "does not provide substantial evidence supporting an adverse credibility determination" (doc. 13 at 9).  Although the ALJ did discount Plaintiff's credibility (*see* tr. 13–15), an issue the court discusses *infra*, the court does not read the above statement as doing so on the basis of any failure by Plaintiff to pursue mental health treatment.  The ALJ discussed Dr. Horvat's March 2008 consultative examination, noting in part that the information contained in the report was largely based on Plaintiff's subjective responses (tr. 14).  The ALJ also noted that Dr. Horvat had reported a lack of prior mental health records for his review (*id.*) and that Dr. Horvat's assigned GAF score of 65 indicated only mild symptoms and removed Plaintiff's mental limitations from the severe category (tr. 15).  On the basis of a lack of objective support within Dr. Horvat's report and Plaintiff's lack of mental health treatment history, the ALJ proceeded to discount Dr. Horvat's opinion to the extent he did not accept his diagnoses of pain disorder and adjustment disorder.  The ALJ did not discount Plaintiff's credibility for failing to pursue mental health treatment.  Nor does the record suggest that Plaintiff's mental status affected any failure to seek treatment, such as by limiting his insight or causing him to exercise poor judgment in failing to seek treatment.  *Cf.* Sparks, 434 F. Supp. 2d at 1136 (citing Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

The court further notes that the ALJ was entitled to discount Dr. Horvat's opinion.  The opinion of a

by ARNP Bryan. As an ARNP, this practitioner is not an "acceptable medical source" who can establish the existence of an impairment. 20 C.F.R. § 416.913(a); Crawford, 363 F.3d at 1160. Nevertheless, evidence from other valid sources, such as ARNP Bryan, may be used to show the severity of a claimant's impairment and how it affects his ability to work. *See* § 416.913(d). In this case, however, Plaintiff fails to point to information in ARNP Bryan's notations that addresses the severity of Plaintiff's alleged mental impairments of depression and anxiety or how these impairments might affect Plaintiff's ability to work.

In short, Plaintiff has identified nothing in the record that establishes he suffers from a mental impairment that significantly limits his ability to perform basic work activities. Thus the court concludes there is no basis to find error in the ALJ's step two determination that Plaintiff does not have a severe mental impairment.

Next, contrary to Plaintiff's apparent contentions, the ALJ did not err at step two with respect to the degenerative changes in Plaintiff's right knee or Plaintiff's diagnosis of fibromyalgia. As to the latter condition, as previously noted, an ARNP is not an "acceptable medical source" whose opinion can establish the existence of an impairment. Crawford, 363 F.3d at 1160. Thus ARNP Bryan's diagnosis alone cannot establish that Plaintiff suffers from fibromyalgia. Other than ARNP Bryan's opinion, Plaintiff identifies no record evidence concerning a diagnosis of fibromyalgia. Accordingly, the ALJ's refusal to find that fibromyalgia was a severe impairment was not error.

As to the degenerative changes in Plaintiff's right knee, the ALJ found that Plaintiff's alleged right knee pain did not meet the durational requirement and that the credible medical evidence did not reflect it caused any functional limitations (tr. 13). Even if the durational requirement could be

---

psychologist who only examines a claimant one time need not be given great weight. *See* Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004). Moreover, the ALJ had good cause to discount Dr. Horvat's diagnoses of pain disorder and adjustment disorder. *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (stating that good cause to discount the opinion of a physician may exist where the opinion is not bolstered by the evidence, supports a contrary finding, or is conclusory or inconsistent with the physician's own medical records). As the ALJ in this case noted—and Plaintiff has not disputed with any references to the record—Dr. Horvat's report lacked objective support for his diagnoses and the record available to Dr. Horvat did not reflect any mental health treatment history.

satisfied,[14] Plaintiff points to no record evidence which discusses the degree or nature of the changes or any functional limitations caused by them. Indeed, although after November 2008 Plaintiff presented to the Liberty County Medical Center on numerous occasions, he never sought treatment for or complained of right knee pain (tr. 527–37). In short, it was not error for the ALJ to fail to find that degenerative changes to Plaintiff's right knee constituted a severe impairment.

The ALJ's Consideration of ARNP Bryan's February 5, 2008, Opinion

Plaintiff contends that the ALJ erred by failing to credit ARNP Bryan's February 5, 2008, opinion under the treating physician's rule (doc. 13 at 11).[15] Plaintiff submits that ARNP Bryan's "findings of diminished grip strength and balance are consistent with 2 year[s] of treatment and testing. The ALJ should not be allowed to dismiss these findings without a clear explanation as to why they should not be given deference." (*id.*).

The court concludes that the ALJ did not commit reversible error in failing to give ARNP Bryan's February 2008 report great weight. As previously noted, an ARNP is not an acceptable medical source. *See* 20 C.F.R. § 416.913. Thus, while ARNP Bryan's disability opinion was entitled to some consideration, it was not entitled to the significant weight or deference ordinarily given to a treating source. *See* 20 C.F.R. § 416.902 (explaining that a treating source must be an acceptable medical source); § 416.927(c)(2) (stating that more weight is generally given to the opinions of treating sources).

In addition, as the ALJ determined (tr. 15), ARNP Bryan's conclusions are entitled to less weight because they are not supported by physiological tests and are contradicted by other objective medical evidence of record. *See* 20 C.F.R. § 416.927(c)(3)(4) (stating that more weight will be given to opinions that are supported by medical signs and laboratory findings and are consistent with the record as a whole); *see also* <u>Lewis</u>, 125 F.3d at 1440 (stating that good cause to discount the opinion of a physician may exist where the opinion is not bolstered by the evidence, supports

---

[14]     The only medical evidence of a problem related to his right knee that Plaintiff identifies in the record is dated July 2007, when x-rays showed degenerative changes in the medial compartment (tr. 268). Although Plaintiff does not cite other references in the record that pertain to pain in his right knee caused by degenerative changes, the court notes that on several occasions in November 2008 he complained of right knee pain (*see* tr. 538; 539; 540).

[15]     The parties acknowledge that the ALJ incorrectly stated that the February 5, 2008, assessment written by ARNP Bryan was completed by a treating physician (*see* tr. 15; doc. 13 at 11; doc. 16 at 17 n.7).

a contrary finding, or is conclusory or inconsistent with the physician's own medical records). More specifically, ARNP Bryan opined that Plaintiff's grip strength (as well as his arm and leg strength and fine motor skills) were diminished but he did not cite physical findings in support of these conclusions (tr. 318). Nor, while his handwritten notes are often difficult to decipher, do ARNP Bryan's records appear to contain objective evidence which supports his conclusions—and Plaintiff points to none. ARNP Bryan's vague statement that Plaintiff's grip strength was diminished (by two-thirds "compared to others this pt's age" (tr. 318)) is contradicted by the more specific physical finding of Dr. Faruqui, who noted on examination that Plaintiff's grip strength was "bilaterally equal and normal." (tr. 453). Similarly, the ALJ rejected ARNP Bryan's statement that Plaintiff's gait was unsteady (tr. 15), noting Dr. Faruqui's comment Plaintiff had recently walked on a treadmill unassisted for ten minutes (tr. 453). Dr. Faruqui also found that Plaintiff's strength in all extremities was "5/5" and that his gait was normal (*id.*). Additionally, the ALJ determined that the opinions of two non-examining state agency physicians supported the RFC assessment (tr. 15). These physicians opined that Plaintiff was capable of performing a limited range of light work and had no manipulative limitations (tr. 455–62; 508–15). Both of the non-examining state agency physicians discounted ARNP Bryan's statements concerning Plaintiff's grip strength and gait (tr. 461; 514), with one noting correctly that there was no medical evidence of record to support the statements (tr. 514).

For all of the foregoing reasons, the court concludes that the ALJ's refusal to give great weight to the February 5, 2008, opinion of ARNP Bryan was not error, as the opinion is not supported by objective physical findings and is inconsistent with other substantial evidence of record.

### The ALJ's Credibility Finding

Plaintiff makes a cursory and undeveloped, but pointed, challenge to the ALJ's credibility finding that Plaintiff "was credible only to the extent that his testimony was consistent with the ALJ's residual functional capacity (Decision pg. 5). This finding by the ALJ, without any discussion at all, of the Plaintiff's testimony is conclusory, and does not meet his duty to fully and fairly develop the record . . . ." (doc. 13 at 12). The Commissioner responds that, "[c]ontrary to Plaintiff's argument, the ALJ considered Plaintiff's testimony about his alleged leg and back

problems, difficulty with lifting, swollen feet, falling, and memory problems (Pl.'s Br. at 12; Tr. 14)." (doc. 16 at 19).

To establish disability based on testimony concerning pain or other subjective symptoms, a three-part "pain standard" must be satisfied. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). That is, a claimant must first show evidence of an underlying medical condition and then either (a) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (b) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain. *Id.*; *see also* Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that this "standard also applies to complaints of subjective conditions other than pain").

When medical signs and laboratory findings establish that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and the extent to which those symptoms limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1); Social Security Ruling ("SSR") 96–7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996).[16] In so doing, the ALJ is to consider the objective medical evidence and other evidence provided by the claimant and his treating and non-treating sources concerning what may precipitate or aggravate his symptoms; what medications, treatment or methods are used to alleviate the symptoms; and how the symptoms affect the claimant's daily living. 20 C.F.R. § 416.929(c)(3). The ALJ's credibility finding must be grounded in the evidence and contain specific reasons that are supported by the record evidence. SSR 96–7p at 4; Hale, 831 F.2d at 1011. "If a claimant testifies as to his subjective complaints of disabling pain and other symptoms . . . , the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). *See also* Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (per curiam) ("[W]here proof of a disability is based upon subjective evidence and

---

[16] Pursuant to SSR 96-7p, a claimant's credibility determination must include consideration of the entire case record, objective medical evidence, the individual's own statements about symptoms, statements provided by treating or examining physicians or psychologists, and other persons about the symptoms and how they affect the claimant, and any other relevant evidence in the case record. *See* SSR 96–7p, 1996 WL 374186, at *4.

a credibility determination is, therefore, a critical factor in the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.").

In the instant case, in evaluating Plaintiff's subjective complaints the ALJ first referenced the correct pain standard before determining that Plaintiff's statements—*in documents presented in connection with his SSI application*—were not credible to the extent they were inconsistent with the RFC assessment (tr. 13–14). As Plaintiff argues—but the Commissioner fails to acknowledge—the ALJ did not address Plaintiff's *hearing testimony* regarding his pain and other symptoms. The evidence cited by the ALJ in support of his credibility finding is limited to the January 2008 MRI and other unspecified evidence of Plaintiff's history of treatment for low back complaints (tr. 14). The ALJ does not articulate specific reasons for discounting Plaintiff's subjective complaints, though it appears he did so based on a lack of objective proof of his symptoms. While a lack of objective evidence is a factor that may properly be considered in discounting a claimant's complaints, it may not be the *only* basis for doing so. *See* 20 C.F.R. § 1529(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"); SSR 96–7p (because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," an ALJ "*must* consider [other factors] *in addition to the objective medical evidence* when assessing the credibility of an individual's statements") (emphasis added); 20 C.F.R. § 416.929(c)(3).[17] *See also, e.g.*, Cline v. Sullivan, 939 F.2d 560, 566 (8th Cir. 1991) ("an ALJ may not base a denial of benefits solely on a lack of objective medical evidence") (citations omitted).

Here, although Plaintiff testified at the hearing that his pain and other symptoms were disabling, there is no discussion of the factors set out in SSR 96–7p and § 416.929(c)(3), such as

---

[17] SSR 96-7p and 20 C.F.R. § 416.929(c)(3) cite the following factors: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures used to relieve the pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

what may precipitate or aggravate Plaintiff's pain and other symptoms, what medications, treatment or methods are used to alleviate these symptoms, and how the symptoms affect the claimant's daily living.  As the ALJ failed to clearly "articulate explicit and adequate reasons" for discrediting Plaintiff's allegations, Dyer, 395 F.3d at 1210, reversal is warranted so that in making his credibility determination the ALJ can properly consider Plaintiff's hearing testimony, in its entirety.

The court notes that the ALJ's error in making his credibility assessment has the potential to also affect his RFC determination.  *See* Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009) (stating that "[s]ince the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.").  Thus if the ALJ reaches a different credibility assessment on remand, it may be necessary for him to revise Plaintiff's RFC, *see id.,* and, also, revise the hypothetical question posed to the VE on which the ALJ relied in reaching his disability determination.  Additionally, although the court has found no error in the ALJ's consideration of Plaintiff's mental impairments, no error was found based on the court's review of the evidence now before the court, some of which is not fully legible.  Thus, because the case is being remanded on other grounds, upon remand the ALJ should reconsider whether Plaintiff suffers from any medically determinable mental impairments and, if so, whether the impairments are severe or cause any work-related functional limitations that should be included in the RFC.  To this end, the ALJ should endeavor to obtain legible treatment records from the Liberty Community Health Center or otherwise ascertain the precise nature of the treatment Plaintiff obtained there (or elsewhere, if treatment was obtained elsewhere) during the time frame relevant to this appeal.

For the foregoing reasons, the undersigned concludes that the Commissioner's decision fails to follow proper legal standards and should not be affirmed.  *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at1556 (remanding for additional administrative proceedings).  Pursuant to sentence four of 42 U.S.C. § 405(g), the court therefore shall reverse the decision of the Commissioner and remand this action to the Commissioner for further proceedings consistent with this Order.

Accordingly, it is **ORDERED** that:

1.    Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

2.    The decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

At Pensacola, Florida this 17th day of June 2013.

/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**